ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL ESPECIAL

| | | |
|---|---|---|
| UNIQUE SECURITY, CORP.<br><br>Recurrente<br><br>v.<br><br>JUNTA DE SUBASASTAS DEL MUNICIPIO AUTÓNOMO DE CAYEY; MUNICIPIO AUTÓNOMO DE CAYEY<br><br>Recurridos<br><br>JOM SECURITY SERVICES INC.<br><br>Proponente Agraciado<br><br>GENESIS SECURITY SERVICES, INC.<br><br>Otro Proponente | KLRA202500058 | *Revisión Judicial* procedente de la Junta de Subastas del Municipio Autónomo de Cayey<br><br>Subasta Núm.: 2025-011<br><br>Sobre: Impugnación de Adjudicación de Subasta General sobre "Servicios de Guardia de Seguridad" |

Panel integrado por su presidente, el Juez Rodríguez Casillas, el Juez Marrero Guerrero y el Juez Campos Pérez

Campos Pérez, Juez Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 13 de marzo de 2025.

Comparece Unique Security, Inc. (Unique Security o Recurrente) mediante un recurso de revisión judicial. Impugna la adjudicación enmendada de la *Subasta General 2025-011 Servicios de Guardias de Seguridad.* La decisión fue emitida el 30 de diciembre de 2024 y notificada el 2 y el 13 de enero de 2025, por la Junta de Subastas del Municipio Autónomo de Cayey (Junta o Recurrido).

**I.**

Surge de los autos que, el 22 de abril de 2024, la Junta emitió un aviso de varias subastas generales en un periódico del País.[1] La

---

[1] Apéndice del Recurrente, págs. 23-26.

Subasta 2025-011 correspondía al servicio de 24 horas de guardias de seguridad armados y desarmados. La Junta dio a conocer las especificaciones de la licitación pública municipal; y fijó el término para someter las propuestas hasta el 16 de mayo de 2024.[2] Para la Subasta 2025-011, se presentaron tres proponentes: Unique Security, JOM Security Services, Inc. y Genesis Security Services, Inc.[3] En un escueto comunicado fechado el 12 de julio de 2024, la Junta adjudicó la buena pro a favor de Job Security Services.[4] La carta de adjudicación no incluyó las tarifas ofertadas por los tres proponentes ni los fundamentos por los cuales se beneficiaba el interés público y que motivaron al Recurrido a favorecer a un licitador que no ofertó el precio más económico.

Unique Security impugnó la adjudicación ante este foro revisor el 22 de julio de 2024, en el caso KLRA202400392.[5] Pendiente de adjudicación, la Junta solicitó la desestimación del recurso por adolecer de prematuridad, toda vez que la adjudicación incumplió con las exigencias legales del debido proceso de ley.[6] A esos efectos, esta curia emitió una *Sentencia* el 30 de septiembre de 2024, en la que desestimó la causa por falta de jurisdicción.[7] Intimó a la Junta a enmendar la adjudicación y atemperarla a los requisitos establecidos por nuestro ordenamiento jurídico.[8]

Así las cosas, el 30 de diciembre de 2024, remitida por correo certificado el 2 de enero de 2025 y luego por correo electrónico el 13 de enero de 2025, la Junta emitió la *Notificación de Adjudicación*

---

[2] Apéndice del Recurrente, págs. 27-36.Además, Apéndice del Recurrido, págs. 9-10.
[3] Apéndice del Recurrente, págs. 37-40. Cabe señalar que Unique Security no unió las propuestas de los otros dos licitadores, las cuales fueron sí fueron suplidas por el Recurrido. Apéndice del Recurrido, págs. 1-8.
[4] Apéndice del Recurrente, pág. 22.
[5] Apéndice del Recurrente, págs. 4-40.
[6] Apéndice del Recurrente, págs. 41-43.
[7] Apéndice del Recurrente, págs. 47-54. El dictamen fue objeto de una *Moción de Reconsideración*, la cual fue declarada No ha Lugar. Véase, Apéndice del Recurrente, págs. 55-59; 60.
[8] Refiérase al Apéndice del Recurrente, págs. 61-81.

*Subasta General 2025-011 "Servicios de Guardias de Seguridad"*

*Enmendada.*[9] Allí desglosó la trilogía de propuestas.

| Descripción | JOM Security | Unique Security | Genesis Security |
|---|---|---|---|
| Servicios de guardias uniformados armados | $13.96 por hora | $13.95 por hora | HR $16.55 |
| Servicios de guardias uniformados desarmados | $12.95 por hora | $12.95 por hora | HR $15.26 |
| Servicios guardias 24 horas | Desarmados $12.95 por hora Armados $13.96 por hora | Desarmado/ mensual $10,082.80 | HR $15.26 |
| Relojes para rondas | No charge | Incluido | HR $0.20 |
| Patrullaje preventivo con vehículos a facilidades municipales | Este costo es sólo por el vehículo semanalmente. Costo por oficial desarmado o armado según cotización ítem 1 y 2 $235.00 semanal | Auto compacto $2.00 | HR $18.01 |
| Monitoreo de cámaras de seguridad | Por hora por cámara $0.34 | Por cámara $0.45 | De ser monitorio interno aplica costo $65.00 |

La Junta reiteró la adjudicación a favor de JOM Security Services.

Se desprende del documento que, en atención a la entrada en vigor del nuevo salario mínimo, la Junta solicitó que los proponentes informaran si deseaban revisar los costos ofertados. Solamente JOM Security Services varió las tarifas por hora a **$15.22** por guardias armados y **$14.21** por guardias desarmados.[10]

En cuanto al Recurrente, la Junta expresó que, a pesar de ser el postor con el precio más bajo, éste incumplió con el requisito de

---

[9] Apéndice del Recurrente, págs. 1-3 y 80-81.
[10] Apéndice del Recurrido, págs. 15-18.

presentar el Pliego Original firmado.[11] Añadió el Recurrido que el Recurrente tampoco figuraba registrado como patrono en el Departamento del Trabajo y Recursos Humanos.[12] Además, indicó que la propuesta no incluyó referencias ni una descripción de su experiencia.

Insatisfecho, el 23 de enero de 2025, Unique Security compareció ante nos mediante el recurso del epígrafe e imputó la comisión de los siguientes errores:

A. *Err[ó] la Junta de [S]ubastas del Municipio de Cayey en adjudicar la subasta a favor de JOM Security pues modificó las tarifas ofertadas en su propuesta en dos ocasiones distintas, por lo que incumplió con la especificación medular de que "[n]inguna oferta o modificación a oferta será aceptada para evaluación si llegara pasada la hora de radicación", además de que se obvió la disposición a los efectos de que "los licitadores asumen la responsabilidad por sus errores en las ofertas"; en tal contexto, procede descalificar a JOM Security como proponente por haber incumplido de forma crasa con especificaciones medulares de la subasta General Núm. 2025-011 y adjudicar a favor de Unique Security, el mejor postor.*

B. *Aún si de alguna manera la Junta pudiese válidamente obviar la especificación que impide modificar ofertas después de la fecha de radicación de las propuestas, err[ó] la Junta de [S]ubastas del Municipio de Cayey en adjudicar la subasta a favor de JOM Security pues procedía adjudicar la subasta a favor de Unique Security, que es (por mucho) el mejor postor.*

En cumplimiento de *Resolución*, la Junta presentó *Alegato en Oposición a Recurso de Revisión Judicial* el 27 de febrero de 2025. Con el beneficio de ambas comparecencias, resolvemos.

**II.**

El proceso de contratación de servicios por el aparato gubernamental está revestido del más alto interés público, toda vez que aspira "promover la *inversión adecuada, responsable y eficiente de los recursos del Estado*". (Cursivas en el original). *Super Asphalt*

---

[11] Véase, inciso (1) de las *Instrucciones para Someter la Propuesta – Subastas Generales 2024-2026* y Pliego de Unique Security, Apéndice del Recurrido, págs. 7-8 y 9-10.
[12] Apéndice del Recurrido, pág. 14; refiérase también a las págs. 11-13.

*v. AFI y otro*, 206 DPR 803, 820 (2021); *ECA General Contractors, Inc. v. Municipio*, 200 DPR 665, 672 (2018). De ordinario, el procedimiento de subasta es el vehículo utilizado por el Gobierno en la adquisición de bienes y servicios. *Super Asphalt v. AFI y otro*, *supra*, págs. 820-821; *ECA General Contractors, Inc. v. Municipio*, *supra*, pág. 672. "[L]a subasta gubernamental procura establecer un esquema que asegure la competencia equitativa entre los licitadores, evite la corrupción y minimice los riesgos de incumplimiento". *Super Asphalt v. AFI y otro*, *supra*, pág. 821; *ECA General Contractors, Inc. v. Municipio*, *supra*, págs. 672-673.

En nuestra jurisdicción, la Ley Núm. 107 de 13 de agosto de 2020, según enmendada, 21 LPRA sec. 7001, *et seq.*, conocido como *Código Municipal de Puerto Rico*, rige los procedimientos de las subastas municipales.[13] En particular, el Artículo 2.040, *Funciones y Deberes de la Junta*, 21 LPRA sec. 7216, dispone como sigue:

> **La Junta entenderá y adjudicará todas las subastas que se requieran por ley, ordenanza o reglamento y en los contratos de** arrendamiento de cualquier propiedad mueble o inmueble y de servicios, tales como **servicios de vigilancia**, mantenimiento de equipo de refrigeración y otros.
>
> a. *Criterios de adjudicación* — [...] **La Junta hará las adjudicaciones tomando en consideración que las propuestas sean conforme a las especificaciones**, los términos de entrega, **la habilidad del postor para realizar y cumplir con el contrato, la responsabilidad económica del licitador, su reputación e integridad comercial, la calidad del** equipo, producto o **servicio y cualesquiera otras condiciones que se hayan incluido en el pliego de subasta**.
>
> La Junta podrá adjudicar a un postor que no sea necesariamente el más bajo o el más alto, según sea el caso, si con ello se beneficia el interés público. En este caso, la Junta deberá hacer constar por escrito las razones aludidas como beneficiosas al interés público que justifican tal adjudicación.
>
> La adjudicación de una subasta será notificada a todos los licitadores certificando el envío de dicha adjudicación mediante correo certificado con acuse de

---

[13] Véase, Sección 3.19 de la *Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico*, 3 LPRA sec. 9659.

recibo, o mediante correo electrónico, si así fue provisto por el licitador o licitadores. En la consideración de las ofertas de los licitadores, la Junta podrá hacer adjudicaciones por renglones cuando el interés público así se beneficie. **La Junta de Subasta notificará a los licitadores no agraciados las razones por las cuales no se le adjudicó la subasta**. Toda adjudicación tendrá que ser notificada a cada uno de los licitadores, apercibiéndolos del término jurisdiccional de diez (10) días para solicitar revisión judicial de la adjudicación ante el Tribunal de Apelaciones, de conformidad con el Artículo 1.050 de este Código.[14] (Énfasis nuestro).

. . . . . . . . .

Cónsono con lo anterior, el *Reglamento para la Administración Municipal*, Reglamento Núm. 8873 de 19 de diciembre de 2016 (Reglamento Núm. 8873) establece unas pautas generales que los ayuntamientos deben acoger. La Parte II, Sección 5, de la reglamentación aludida atiende el **contenido de los pliegos de especificaciones de la subasta**. Particularmente, el inciso (4) establece:

Los pliegos de la subasta contendrán instrucciones específicas y precisas sobre los términos y condiciones de la referida invitación. El municipio redactará las especificaciones, de manera que expresen claramente las necesidades de la unidad requirente. Además, deben incluir sólo aquellas restricciones o condiciones necesarias para satisfacer las necesidades municipales.

En su Capítulo VIII, Parte I, Sección 5, el Reglamento Núm. 8873 dispone los requerimientos de un **licitador responsable**:

(1) Tiene recursos financieros adecuados para cumplir su obligación o la habilidad de obtener tales recursos.

(2) Es capaz de cumplir con los términos requeridos o propuestos de entrega, según estipulados o requeridos.

(3) Tiene un historial de cumplimiento satisfactorio.

(4) Tiene un historial satisfactorio de integridad y ética comercial.

(5) Tiene la organización, experiencia, contabilidad y controles operacionales y destrezas técnicas necesarias para cumplir sus obligaciones.

---

[14] Al respecto, el referido Artículo 1.050 del Código Municipal de 2020, 21 LPRA sec. 7081, dispone para la revisión de las subastas municipales por parte de este foro intermedio, dentro del término jurisdiccional de diez (10) días contados desde el depósito en el correo de la copia de la notificación del acuerdo final o adjudicación.

(6) Tiene equipo técnico y facilidades necesarias, o la habilidad de obtener tal equipo y facilidades.

(7) Está de otra forma cualificado y sea elegible para recibir una adjudicación de conformidad con las leyes y reglamentos aplicables.

(8) Cualquier otro requerimiento impuesto por el municipio para considerarlo como "licitador responsable".

En armonía, además, el Reglamento Núm. 8873, Parte II, Sección 11, dispone sobre los **parámetros para la adjudicación** en las subastas de suministros de servicios no profesionales.

La adjudicación de las subastas de adquisición, se harán a favor del licitador que esté respaldado por un buen historial de capacidad y cumplimiento y que reúna los siguientes requisitos:

a) que cumpla con los requisitos y condiciones de los pliegos de especificaciones;

b) que sea la más baja en precio o que aunque no sea la más baja en precio, la calidad y/o garantías ofrecidas superan las demás ofertas o se justifique el beneficio de interés público de esa adjudicación.

De adjudicarse a favor de un licitador que no haya ofrecido el costo más bajo, la Junta de Subastas deberá hacer constar por escrito las razones que justifican la adjudicación. Dicha justificación escrita deberá estar firmada por los miembros de la Junta de Subasta que la favorecieron y debe permanecer en el expediente para fines de auditoria futura.

Finalmente, en aras de una **competencia adecuada**, los ayuntamientos están compelidos a rechazar aquellas ofertas de un licitador cuyo precio es irrazonable o que no cumpla con los requerimientos de la subasta. Reglamento 8873, Cap. VIII, Parte II, Sección 12 (1). El Reglamento Núm. 8873, Parte II, Sección 12 (7), provee para que los municipios impartan un **rechazo global** a las propuestas no responsivas. Así reza:

Se podrán rechazar todas las ofertas recibidas para una subasta en los siguientes casos:

a) no cumplan con las especificaciones;

b) no cumplan con las condiciones;

c) ofrezcan precios irrazonables;

d) exista colusión entre todos los licitadores;

e) no ha dado atención y cumplimiento satisfactorio a contratos que le hayan sido otorgados anteriormente;

f) el licitador es deudor del municipio o el Estado Libre Asociado de Puerto Rico y no está acogido a un plan de pago;

g) el licitador ha sido convicto por delitos relacionados a malversación de fondos públicos, conforme la Ley Núm. 458-2000, según enmendada y otras que en lo sucesivo puedan ser aprobadas;

h) cualquiera otra causa justificada por la Junta.

### III.

Unique Security licitó en la Subasta 2025-011. Toda vez que no fue la parte favorecida, acudió ante este tribunal intermedio para la revisión judicial de la determinación de la Junta.[15] Alega, en esencia, que el licitador agraciado JOM Security modificó las tarifas ofertadas en dos ocasiones, en contravención a las especificaciones de la subasta, por lo que debió ser descalificado. Plantea que, primero, corrigió un error oficinesco y, luego, aumentó las tarifas en atención al nuevo salario mínimo. Añade el Recurrente que, aun cuando la Junta pudiese válidamente aceptar tales modificaciones, procedía adjudicársele la buena pro toda vez que era el mejor postor:

**Unique Security**
Guardia desarmado          $12.95 por hora
Guardia armado            $13.95 por hora

**JOM Security**
Guardia desarmado          $14.21 por hora
Guardia armado            $15.22 por hora

**Genesis Security**
Guardia desarmado          $15.26 por hora
Guardia armado            $16.55 por hora

Con relación a los señalamientos realizados por la Junta para descalificar su oferta, el Recurrente aduce que no se desprende que el Pliego Original firmado fuera un requisito *sine qua non*; que la ausencia de la firma no afectó sustantivamente la propuesta y que

---

[15] Advertimos que, en la certificación del recurso, algunos correos electrónicos mediante los cuales el Recurrente certificó la notificación a las partes del caso no coinciden con los correos electrónicos de la portada.

la omisión era un defecto subsanable. Afirma que demostró que no tenía deudas pendientes en el Departamento de Trabajo y Recursos Humanos y que la certificación que establece que no aparece registrado como patrono era un error corroborable con las agencias reguladoras pertinentes. Por último, sostiene que la falta de referencias y la descripción de la experiencia no constaban como requisitos.

En la causa presente, a pesar de que el Recurrente ofertó un precio inferior en comparación con el agraciado, el Recurrido descartó su propuesta. Luego de una evaluación sosegada del expediente, acordamos no intervenir con la determinación de la Junta. Veamos.

De entrada es meritorio aclarar que, contrario a lo alegado, la Junta no le permitió a JOM Security modificar su propuesta para corregir un "error oficinesco". Basado en su experiencia, el Recurrido conoce que la tarifa por hora de los guardias armados siempre es mayor que la de los guardias desarmados. Por ello, se percató del error tipográfico en la propuesta de JOM Security[16] e invirtió las categorías de guardias armados y desarmados, sin alterar el coste ofertado.

En su alegato, la Junta sostiene la validez de su actuación por virtud de las *Condiciones e Instrucciones Generales*. En específico, el inciso 42 dispone como sigue:

> DERECHO DEL MUNICIPIO A OBVIAR CUALQUIER INFORMALIDAD: El Municipio se reserva el derecho a obviar cualquier informalidad en la propuesta de cualquier licitador y de adjudicar la subasta con las condiciones que considere más favorables para el interés público.[17]

Ciertamente, estimamos que la actuación de la Junta no colocó a JOM Security en una posición más ventajosa, sino que

---

[16] Apéndice del Recurrido, pág. 4.
[17] Apéndice del Recurrente, pág. 36.

respondió a una mayor claridad de las propuestas para su debida adjudicación.

Con respecto al aumento de las tarifas que JOM Security realizó con posterioridad, el cambio respondió a una solicitud especifica de la Junta a los tres licitadores por igual. Es decir, en atención a la entrada en vigor del aumento al salario mínimo, JOM varió las tarifas de los guardias armados y desarmados a $15.22 y $14.21, respectivamente.

En cuanto a la primera razón argüida por la Junta para no considerar la propuesta del Recurrente, surge que, de conformidad con el primer inciso de las *Instrucciones para Someter la Propuesta – Subastas Generales 2024-2026*, los licitadores debían firmar e inicialar el Pliego Original y una copia de éste. Revisados los referidos documentos anejados por el Recurrido, surge palmariamente que Unique Security fue el único que no satisfizo dicho requisito. En consecuencia, puede colegirse que, en ese aspecto, no cumplió con las especificaciones de la subasta. A diferencia de la postura del Recurrente, según la Junta, la omisión resultó en una de carácter fatal al no considerarse vinculante.

En torno al segundo fundamente para descartar la oferta del Recurrente, la Junta esbozó que Unique Security no constaba registrado como patrono ante el Departamento del Trabajo y Recursos Humanos. Al examinar el expediente ante nos, en éste se desprende que, entre los requisitos establecidos, el proponente debía presentar "Certificaciones Negativas del Departamento del Trabajo (no deuda seguro por desempleo, seguro incapacidad y registro como patrono)".[18] En el caso del Recurrente, el documento emitido el 13 de mayo de 2024 por la aludida Agencia consignó lo siguiente:

---

[18] Apéndice del Recurrente, pág. 35, inciso 35. Véase, además, Apéndice del recurrido, pág. 10.

SE CERTIFICA QUE SE HA EFECTUADO UNA BÚSQUEDA EN NUESTROS ARCHIVOS Y DE LA MISMA SE DESPRENDE QUE A LA FECHA DE ESTA CERTIFICACIÓN EL SOLICITANTE DE REFERENCIA [UNIQUE SECURITY CORP.] NO APARECE REGISTRADO COMO PATRONO, POR LO QUE NO ADEUDA CONTRIBUCIONES A LOS SEGUROS POR ESEMPLEO E INCAPACIDAD.[19]

Así, pues, en oposición a los otros dos licitadores, Unique Security no ostenta una cuenta patronal registrada. Es forzoso colegir que el Recurrente no satisfizo otro de los requisitos pautados en la subasta.

Para finalizar, sobre la tercera causa de la Junta para denegar la propuesta, el Recurrente alega que las instrucciones de la subasta no incluyeron el requisito de incluir referencias o una descripción de la experiencia. En efecto, de un examen de los autos no surge que los proponentes tuvieran que cumplir con una relación de sus referencias ni con una descripción de su experiencia. Si bien el Código Municipal, *supra*, comprende el criterio de la habilidad del postor para realizar y cumplir con el contrato, así como la reputación e integridad comercial de los proponentes; y el Reglamento Núm. 8873, *supra*, considera a un licitador responsable cuando éste cuenta con la experiencia y destrezas técnicas necesarias para cumplir sus obligaciones, o un historial de cumplimiento satisfactorio, lo cierto es que las *Condiciones e Instrucciones Generales* y las *Instrucciones para Someter la Propuesta – Subastas Generales 2024-2026* no requirieron de manera explícita la presentación de referencias ni una descripción de la experiencia.

Ahora, aun cuando al Recurrente le asista la razón en dicho planteamiento, al considerar los primeros dos incumplimientos antes explicados, somos de la opinión que la Junta no erró al descalificar su propuesta. Por consiguiente, una vez excluido Unique Security, el Recurrido adjudicó la buena pro al próximo licitador

---

[19] Apéndice del recurrido, pág. 14.

responsivo con el precio más bajo. En este caso, JOM Security ofertó un precio inferior al de Genesis Security, por lo que resultó ser el postor favorecido.

**IV.**

Por los fundamentos expuestos, se confirma la adjudicación de la subasta impugnada.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda.  Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones